21 A.3d 643 (2011)
420 N.J. Super. 341
MAHWAH REALTY ASSOCIATES, INC., and TSI Mahwah, LLC, Plaintiffs-Respondents,
v.
TOWNSHIP OF MAHWAH, the Mayor and Council of the Township of Mahwah, and the Planning Board of the Township of Mahwah, Defendants-Appellants.
Docket No. A-1726-10T1
Superior Court of New Jersey, Appellate Division.
Argued June 8, 2011.
Decided July 5, 2011.
*644 Andrew T. Fede argued the cause for appellants (Archer & Greiner, attorneys; Terry Paul Bottinelli, of counsel; Mr. Fede, Hackensack, on the brief).
Ira E. Weiner argued the cause for respondents (Beattie Padovano, attorneys; John J. Lamb and Mr. Weiner, of counsel; Daniel L. Steinhagen, Montvale, on the brief).
Before Judges CUFF, FISHER and FASCIALE.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we consider whether a municipality's adoption of an ordinance inconsistent with its master plan met the requirements of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, and specifically, whether the governing body's reasons for adopting the ordinance were "set forth in a resolution and recorded in its minutes," N.J.S.A. 40:55D-62a. We conclude that the governing body's actions here were sufficient to meet the statute's requirements and reverse.
The record reveals that, on July 27, 2000, the Mahwah Township Council adopted Ordinance 1368, which added health and fitness centers as conditional uses in the IP-120 (industrial park) zone. Plaintiff Mahwah Realty Associates, Inc. (Mahwah Realty), an owner of a health club, filed an action in lieu of prerogative writs challenging the ordinance. By written opinion, Judge Jonathan N. Harris recognized there was "a lack of substantial consistency" between the ordinance and Mahwah's master plan and a flaw in the process, because the council failed to identify the inconsistency and "comply with *645 N.J.S.A. 40:55D-62." Consequently, Judge Harris struck down the ordinance but also declared that "[n]othing in this opinion is intended to suggest that the governing body is prohibited from reintroducing and readopting an ordinance to reach the same or similar result as long as it is done in conformity with the law."
On September 27, 2007, the council adopted Ordinance 1589 to add "health and wellness centers and fitness and health clubs as permitted uses" in the GI-80 (general industrial) and IP-120 zones. Plaintiffs Mahwah Realty and TSI Mahwah, LLC (hereafter "plaintiffs") filed a timely complaint in lieu of prerogative writs, and at the conclusion of a trial, Judge Harris held that Ordinance 1589 was invalid "primarily because Mahwah failed to give adequate and proper notice of its legislative activities to all interested and affected parties" as required by N.J.S.A. 40:55D-62.1. The judge, however, found the "legislative birthing process . . . ha[d] no other significant defects," explaining that "the detailed explanatory information contained in Ordinance 1589's preamble obviate[d] the failure to adopt a separate resolution explaining why the governing body adopted an ordinance inconsistent with Mahwah's" master plan.
On July 23, 2009, the council introduced Ordinance 1653, which sought to "include health and wellness centers and fitness and health clubs as principal permitted uses in the" GI-80 and IP-120 zones.[1] The next day, the municipal clerk sent the ordinance to the planning board with a request for comments. On July 29, 2009, notice of the September 10, 2009 public hearing and "the entire text of the proposed ordinance" was published in a local newspaper. On August 6, 2009, the municipal clerk sent notice of the public hearing by certified mail to "all property owners in the B-40, GI-80, IP-120 zoning districts, all property owners within 200 feet of those zoning districts, as well as all others entitled to notice."
The planning board reviewed the ordinance at its August 10, 2009 meeting and found, among other things, that the ordinance was inconsistent with the master plan but nevertheless "provide[d] needed services to the residents of Mahwah." Consequently, the planning board recommended its adoption and sent a memorandum to the mayor and township council containing its comments.
On September 10, 2009, the council held a public hearing during which it adopted Ordinance 1653. At the same time, the council adopted Resolution 086-09A, which contains the council's reasons for its action. The resolution memorializes the council's recognition that the ordinance was inconsistent with the master plan but that it should be adopted notwithstanding because: (1) "this ordinance . . . will allow for uses that are consistent with the uses that have been permitted in [GI-80 and IP-120] by variances" already granted; (2) "there exists a variety of service-related uses in the GI-80 and IP-120 Zones, including a fitness and health club, gymnasium center, [and] dance academy . . . all of which have been determined to be compatible and appropriate uses in" these zones; (3) "there are buildings in the GI-80 and IP-120 Zones that are sufficiently large in size that can appropriately accommodate health and wellness center and fitness and health club uses"; (4) the location of the zones "will allow the public the opportunity to take advantage of a wide variety of multi-disciplinary health, fitness, and wellness services within facilities in *646 centralized and accessible districts"; (5) "these uses . . . will promote the health, safety, morals and general welfare; guide the appropriate use or development of all lands in Mahwah; provide sufficient space in appropriate locations for these uses; and encourage the coordination of various public, semi-public, and private procedures and activities to . . . benefit . . . the State as a whole"; and (6) "health and wellness centers are a new and unique use not envisioned nor current at the time of adoption of the master plan or zoning ordinance." For these essential reasons, the council found it "appropriate and consistent with the purposes of the [MLUL] to include health and wellness centers and fitness and health clubs as principal permitted uses in the GI-80 Zone and IP-120 Zone."
On October 20, 2009, plaintiffs filed a complaint in lieu of prerogative writs against Mahwah and its mayor, council, and planning board. A later amended complaint alleged that: (1) Ordinance 1653 is arbitrary, capricious, and unreasonable; (2) the ordinance is inconsistent with the master plan and does not comply with the requirements for adoption of inconsistent ordinances; (3) the ordinance contains procedural defects resulting from a failure to comply with N.J.S.A. 40:49-2; (4) the planning board's recommendation was defective; (5) the council and planning board failed to make previously requested amendments to the ordinance; (6) the council and planning board failed to give proper notice; (7) the ordinance did not take into account the minimum lot size and prior ordinances considering health club use as a conditional use; (8) Mahwah failed to adequately study the proper zone in which to place health and fitness clubs and failed to study the elimination of the pass through from the IP-120 Zone to the B-40 Zone; (9) the ordinance's definition of "medical spa" is ambiguous, meaning Mahwah may have authorized this retail service without full consideration; (10) the planning board members have conflicts of interest; (11) the council members have conflicts of interest; and (12) the planning board's recommendation, upon which the council relied in adopting the ordinance, was defective.
Another judge was assigned to the case. On June 4, 2010, the judge entered an order that permitted plaintiffs to take depositions regarding their conflict-of-interest allegations. A few weeks later, plaintiffs moved for an order compelling the depositions of the mayor, council members, and planning board members. The judge granted plaintiffs' motion and denied defendants' cross-motion for a protective order, recognizing "the inherent danger of any inquiry that may lead into the mental processes surrounding the decision of a board member" but concluding that "facts tending to prove a conflict . . . are not within the realm of the mental processes of members of the [c]ouncil and [p]lanning [b]oard, and are not protected."
Plaintiffs' counsel deposed the mayor and other council members in August 2010. At the end of the month, plaintiffs sought more specific answers because the deponents failed "to answer any questions related to treatment at Valley Hospital," which was alleged in the complaint to be a proponent of the ordinance. Defendants opposed this motion and again cross-moved for a protective order. The judge granted plaintiffs' motion and ordered the council and planning board members to answer the following questions:
(1) Whether any member (or immediate family member) spent time in Valley Hospital and the duration of such stay; (2) Whether any member (or immediate family member) was treated in the emergency room of Valley Hospital; (3) *647 Whether the experience at Valley Hospital [was] satisfactory; (4) Whether Valley Hospital helped the condition or even save[d] a life of any member (or immediate family member); (5) Whether any member (or member of their immediate family) incurred substantial bills, or any bills, from Valley Hospital; [and] (6) Whether any member (or member of their immediate family) attended any programs offered by Valley Hospital (i.e., cardiac rehabilitation for a heart attack).
The judge denied defendants' cross-motion for a protective order, determining that these "limited questions . . . are not prejudicial" and do not constitute "a fishing expedition."[2]
During the course of these discovery disputes, defendants moved for summary judgment, arguing, among other things, that the council complied with the applicable procedural requirements in adopting the ordinance. Plaintiffs opposed the motion and cross-moved for summary judgment, asserting that the process used to adopt the ordinance was defective. The judge denied defendants' motion and granted plaintiffs' cross-motion, finding there were no genuine issues of material fact and concluding that "N.J.S.A. 40:55D-62(a) is unambiguous and requires that the reasons for adopting the ordinance be recorded in the minutes pursuant to discussion at the hearing, in addition to being set forth in the resulting resolution." Because the council members failed "to discuss the reasons for passing Ordinance 1653 during the hearing and did not record those reasons in the minutes," the judge determined that plaintiffs were entitled to judgment, as a matter of law, declaring Ordinance 1653 "null, void and of no force and effect."
Defendants appealed, arguing that the trial judge erred (1) in granting summary judgment and (2) in compelling the depositions of the mayor, council members, and planning board members. We agree that the trial judge misinterpreted the requirements of N.J.S.A. 40:55D-62a and reverse the summary judgment entered in favor of plaintiffs.
Summary judgment was based on the judge's interpretation of the requirements of N.J.S.A. 40:55D-62a, which permits a municipality's governing body to amend or revise the land use or housing plan elements of the municipality's master plan in a manner that is "in whole or part . . . inconsistent with" those elements "but only by affirmative vote of a majority of the full authorized members of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes when adopting such a zoning ordinance" (emphasis added). Whether the council's actions met these requirements lies at the heart of this appeal.
The record reveals that the council adopted the ordinance and then referred it to the planning board, which deemed it inconsistent with the master plan but nevertheless endorsed it for the many reasons set forth in its resolution.[3] After giving *648 notice, the council held a public meeting regarding the ordinance and listened to those who sought to be heard. The minutes summarize those arguments. Following that, the council voted to adopt resolution 086-09, which thoroughly explains the rationale behind the council's decision. Although the resolution is referenced in the minutes of the September 10, 2009 meeting, the minutes do not recite those contents verbatim nor any other verbatim statements made by council members at that time.
For those reasons, plaintiffs argued and the trial judge agreedthat the process was defective. The judge held that although the council adopted a "contemporaneous resolution outlining [its] reasons for passing the ordinance," it "failed to discuss the reasons for passing Ordinance 1653 during the hearing and did not record those reasons in the minutes of the hearing." The judge concluded that N.J.S.A. 40:55D-62a "is unambiguous and requires that the reasons for adopting the ordinance be recorded in the minutes pursuant to discussion at the hearing, in addition to being set forth in the resulting resolution." That is, the judge held that "[t]he passing of a resolution is an added procedural requirement, and is not a substitute for the long-standing requirement that the governing body discuss the reasons for deviating from the master plan during the hearing so that those reasons may be openly and clearly expressed to the public in the minutes of the hearing."
The judge's view of N.J.S.A. 40:55D-62a represents a plausible and not unreasonable interpretation of the statutory language, but we conclude that the judge's insistence on a literal interpretation mistakenly puts municipalities to a burden likely unintended by the Legislature. The statute, as we have mentioned, expresses that the council's reasons be "set forth in a resolution and recorded in its minutes." N.J.S.A. 40:55D-62a (emphasis added).[4] The judge has interpreted the latter aspect as requiring a verbatim transcript of the council's debate and discussion of all aspects of the resolution; that is, the judge held that N.J.S.A. 40:55D-62a requires a recording "of the governing body's thought process," which would include "any debate, dissent, or opposing views voiced at the hearing," in order "to satisfy the MLUL's underlying policy goal of full public disclosure of a municipality's rationale for passing a zoning ordinance that is inconsistent with its master plan."
We disagree with this reasoning, first, because it assumes that "record[ing]" the governing body's reasons "in its minutes" requires the inclusion in the minutes of everything said at the meeting on the subject. Minutes have never been viewed in this way. They need contain only a recitation of the matters discussed, the identities of the speakers, a summary of the discussion, *649 and a statement of the decisions made. Cox & Koenig, New Jersey Zoning & Land Use Administration, § 2-7.6 (2011) (recognizing that, although the practice of "keep[ing] a verbatim record of every hearing" is "of value," it is not required). Here, the council heard at length the argument of plaintiffs' counsel, who, during his argument to the council, recognized this was "the fourth reiteration of the ordinance" and professed no expectation that the members would, or should, expound on their reasoning in ruling upon it. Moreover, the minutes contain a summary of the attorney's argument, identified others that spoke and briefly summarized the points that they made, and recorded all members' votes. The minutes state that the council president recused himself, one member voted against, and the five remaining members voted in favor of the ordinance. In addition, the minutes memorialize the council's adoption of the resolution, which explains the council's reasons for its determination. We conclude that the minutes were sufficient to meet the requirement of N.J.S.A. 40:55D-62a and that the council was not required to reiterate in the minutes what was stated in the referenced resolution. Such an approach exalts form over substance.
Second, there is nothing in the statute that would require every member to express a view, whether in support or against the ordinance or resolution, as seems suggested by the judge's decision. The judgment under reviewif allowed to standwould ostensibly require, upon any future attempt to adopt this ordinance, that each member provide an oral opinion underlying his or her vote, whether for or against. We reject this literal interpretation of the statute because of its tendency to unduly burden a governing body beyond the Legislature's likely intent. See N.Y. SMSA Ltd. P'ship v. Twp. Council of Edison, 382 N.J.Super. 541, 550, 889 A.2d 1129 (App.Div.2006) (recognizing that the MLUL was "intended to simplify, expedite and standardize procedures for approval by locals boards . . .").
Judge Learned Hand once wrote, "[t]here is no more likely way to misapprehend the meaning of languagebe it in a constitution, a statute, a will or a contractthan to read the words literally, forgetting the object which the document as a whole is meant to secure." Cent. Hanover Bank & Trust Co. v. Comm'r, 159 F.2d 167, 169 (2d Cir.), cert. denied, sub nom., Wilkinson v. Comm'r, 331 U.S. 836, 67 S.Ct. 1518, 91 L.Ed. 1848 (1947). It is not the wording alone but the policies underlying the statute, the legislative scheme of which it is a part, and the reasonableness of the proposed interpretation, that guide a court in ascertaining legislative intent. See, e.g., Longo v. Mkt. Transition Facility, 326 N.J.Super. 316, 323, 741 A.2d 149 (App.Div.1999). In short, in seeking the legislative intent, we invoke Chief Justice Weintraub's instruction that "[t]he spirit of the legislative direction prevails over the literal sense of the terms." Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956).
N.J.S.A. 40:55D-62a undoubtedly intends to secure for the public, the litigants, and the reviewing courts, a clear understanding of the rationale underlying the governing body's actions. The statute also imposes these requirements to "preclude the governing body from making its decision arbitrarily." Riya Finnegan, LLC v. Twp. Council of S. Brunswick, 197 N.J. 184, 192, 962 A.2d 484 (2008). These goals were satisfied by the manner in which the council expressed its reasons for adopting the ordinance. There is no mistaking *650 the council's reasoning.[5] It is contained in the resolution, and the resolution is referred to in the minutes. This is sufficient to satisfy the literal requirements of N.J.S.A. 40:55D-62a, and it satisfies as well the goals of providing the public and interested parties with an understanding of why the council acted as it did. And the notion that the expression of the council's action constitutes a bulwark against arbitrary action is likewise satisfied, since the rationale for its determination is readily available by reference to the resolution.
Lastly, although largely moot because much of the discovery complained of by defendants has been taken, to the extent plaintiffs may intend on continuing, following our remand, to seek to have defendant municipal officials divulge information regarding any treatment they may have received at Valley Hospital, we reverse the discovery orders of August 5, 2010 and September 16, 2010. Absent a clear showing, which has not been made, that any of these municipal officials has a personal or financial interest in Valley Hospital, N.J.S.A. 40:55D-69, the inquiry into what medical treatment they may have received there is overly broad and unnecessarily intrusive. See Hughes v. Monmouth Univ., 394 N.J.Super. 193, 196-99, 925 A.2d 741 (App.Div.), certif. denied, 192 N.J. 599, 934 A.2d 640 (2007).
For these reasons, we reverse the summary judgment entered in favor of plaintiffs and remand to the trial court for further proceedings in conformity with this opinion. We do not retain jurisdiction.
NOTES
[1] The only difference between this ordinance and Ordinance 1589 is the fact that the former does not apply to the B-40 (highway business) zone.
[2] At oral argument, the parties' attorneys were unable to answer our questions regarding whether or to what extent this discovery had been completed. As a result, we asked counsel to provide information regarding the state of discovery and thereafter received a letter from counsel representing that many but not all the depositions sought by plaintiffs had already occurred.
[3] The planning board stated that, although health and wellness centers and fitness and health clubs "were not specifically addressed in the current [m]aster [p]lan," "the omission of `[h]ealth and [w]ellness [c]enters' was not intentional, as such use is a relatively new and unique use not normally expected to be found in a[m]aster [p]lan." In addition, the board recognized that the 2001 Master Plan Periodic Reexamination Report recommended that fitness and health clubs "be permitted as conditional uses in the IP-120 zone." The board also stated that health and wellness centers and fitness and health clubs would "be consistent with other uses in . . . those [z]ones" and "would provide needed services and would be beneficial to the residents of Mahwah and the surrounding area."
[4] "And" and "or" are often used interchangeably and the Legislature's use of one does not necessarily preclude the application of the other; those words, however, are ultimately to be interpreted in accordance with the legislative intent. Howard v. Harwood's Rest. Co., 25 N.J. 72, 88, 135 A.2d 161 (1957). We accept for present purposes that the Legislature's insertion of the word "and" instead of "or" between "set forth in a resolution" and "recorded in its minutes" was intended to create two distinct requirements.
[5] Indeed, the council previously expressed its reasons for adopting a similar ordinance, which was previously struck down for procedural reasons, in a manner that Judge Harris correctly found sufficient in an earlier lawsuit.