917 A.2d 826 (2007)
391 N.J. Super. 231
Patricia MORELLA, Petitioner-Respondent,
v.
GRAND UNION/NEW JERSEY SELF-INSURERS GUARANTY ASSOCIATION, Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 2006.
Decided March 21, 2007.
*827 Anthony C. Famulari argued the cause for appellant New Jersey Self-Insurers Guaranty Association (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; Mr. Famulari, of counsel; Robert L. Ghelli, Newark, on the brief).
Ronald M. Gutwirth, Orange, argued the cause for respondent.
Before Judges AXELRAD, R.B. COLEMAN and GILROY.
The opinion of the court was delivered by
*828 GILROY, J.A.D.
Respondent, New Jersey Self-Insurers Guaranty Association (Association),[1] appeals from the July 20, 2005, decision and order of the Division of Workers' Compensation (Division), directing the Association to pay petitioner Patricia Morella's prescription expenses pursuant to the December 11, 1998 order approving settlement. The primary question presented on appeal is whether a petitioner, whose injury occurs before the employer's insolvency, is required to file a proof of claim in the employer's bankruptcy proceeding before qualifying for compensation payments under N.J.S.A. 34:15-120.18a. Because we conclude that the statute creates two classes of claimants, those injured before and those injured after the employer's insolvency, and that the requirement of filing a proof of claim only applies to the latter, we affirm.
On January 26, 1991, petitioner injured herself while in the course and scope of her employment with Grand Union, a self-insured employer for workers' compensation claims, N.J.S.A. 34:15-77[2]. On August 4, 1992, petitioner filed her claim petition alleging orthopedic, neurological, psychiatric and internal injuries. On June 30, 1997, petitioner filed an amended petition to join the Second Injury Fund, pursuant to N.J.S.A. 34:15-95. After commencement of trial, petitioner and Grand Union entered into a consent order approving settlement. Petitioner and the Second Injury Fund also entered into a consent order entitling petitioner to Second Injury Fund benefits. On December 11, 1998, the Division entered an order approving a settlement declaring petitioner totally and permanently disabled and assessing 65% of petitioner's total disability against Grand Union. The order also determined Grand Union liable for $1,355.01 in prescription costs and for future monthly prescription costs of approximately $220 per month. On June 8, 1999, the Division entered a decision determining petitioner eligible for Second Injury Fund benefits.
In the interim, on June 24, 1998, Grand Union filed a Chapter 11 bankruptcy petition. Petitioner never received notice of the need to file a proof of claim in the bankruptcy action. However, petitioner did learn of the proceeding from Grand Union's attorney who had informed her counsel that it was not necessary to file a proof of claim in the bankruptcy action "because respondent was self-insured and had a bond." As such, the order approving settlement of December 11, 1998, was entered without petitioner seeking relief from the automatic stay of the bankruptcy court, and Grand Union continued making total disability payments until August 7, *829 1999. On October 2, 2000, Grand Union filed a second Chapter 11 bankruptcy petition, and its first petition was dismissed. Petitioner did not receive notice of the second bankruptcy petition. On October 8, 2002, an order was entered in the bankruptcy action confirming Grand Union's Chapter 11 Plan of Liquidation. Article 4, section 4.4, of the Plan provided that unsecured creditors, which include workers' compensation claimants, "will not receive any distributions on account of such Claims."
Following the entry of the order approving settlement on December 11, 1998, petitioner received her total disability payments from Grand Union and the Second Injury Fund. However, she did not receive any reimbursements for prescriptions, as required by the order. On February 7, 2003, petitioner filed a motion to compel Grand Union to pay her prescription costs under the order of settlement. Grand Union, through its surety, paid the monthly prescription costs from March 2003 through November 2003. In or about November 2003, Grand Union's bond was exhausted, and the surety ceased paying petitioner's monthly prescription expenses. In January 2004, as a result of Grand Union's insolvency and the exhaustion of its workers' compensation bond, counsel for the employer was relieved, and the case was placed on the Division's list to be handled by the Association.
On June 3, 2004, petitioner filed a claim with the Association. On June 21, 2004, the Association denied the claim. On April 20, 2005, petitioner moved to compel payment of her prescription costs against the Association, asserting that at no time prior to January 2, 2004, did Grand Union indicate that its bankruptcy would affect petitioner's ability to secure workers' compensation benefits, or that petitioner was required to file a proof of claim in the bankruptcy action. Petitioner contended that she had accumulated $15,835.41 in prescription costs in addition to the unpaid $1,355.01, which Grand Union had been directed to pay under the order of settlement. The Association opposed the motion, asserting that the Division lacked jurisdiction to adjudicate the claim, and in the alternative, that an employee injured prior to the employer's bankruptcy was required by N.J.S.A. 34:15-120.18a to file a proof of claim with the bankruptcy court as a condition precedent to receipt of compensation payments from the Association.
On July 20, 2005, Compensation Judge Karch entered a decision and order determining that petitioner was entitled to payments for past and future prescription expenses relating to her accident. The Compensation Judge determined that the Association was required to reimburse petitioner the $1,355.01, as directed in the order of settlement of December 11, 1998, and entered judgment accordingly. Because the judge was unable to determine from the proofs presented which post-judgment prescription expenses were related to petitioner's compensable condition, she directed that the Association's liability for such expenses would be determined at a future hearing.[3] On August 24, 2005, *830 Compensation Judge Karch entered an order staying the July 20, 2005 decision and order pending appeal.
On appeal, the Association argues that: 1) the Division lacked subject matter jurisdiction to determine whether the Association had improperly denied payment under N.J.S.A. 34:15-120.18a; and 2) the Division erroneously interpreted the statute by not requiring petitioner to have filed a proof of claim in the bankruptcy proceeding before receiving payments under the statute.
The Association argues that the Division lacked subject matter jurisdiction to determine whether it had properly denied petitioner's claim. The Association contends that only the Superior Court possesses subject matter jurisdiction over the Association's determination. We disagree.
N.J.S.A. 34:15-49a provides in pertinent part that "[t]he Division of Workers' Compensation shall have the exclusive original jurisdiction of all claims for workers' compensation benefits under this chapter." Generally, the Division concerns itself with issues of compensability, or benefits to which an employee may be entitled "for personal injuries to, or for the death of, such employee by accident arising out of and in the course of [his or her] employment." N.J.S.A. 34:15-7 and -49. However, the Division also has "such jurisdiction `as is by fair implication incident to the authority expressly granted.'" Macysyn v. Hensler, 329 N.J.Super. 476, 481, 748 A.2d 591 (App.Div.2000) (quoting Conway v. Mister Softee, Inc., 51 N.J. 254, 258, 239 A.2d 241 (1968)).
Here, the Legislative scheme provides that in acting on claims from injured employees, the Association steps into the shoes of the insolvent employer, the party against whom the employee would normally file a direct claim in the Division. "The [A]ssociation shall be deemed the insolvent member for purposes of chapter 15 of Title 34 of the Revised Statutes to the extent of its obligations on the covered claims and, to that extent, shall have all rights, duties and obligations of the insolvent member as if the member had not become insolvent." N.J.S.A. 34:15-120.18a. Because the Act permits a direct proceeding in the Division against the Association, the Division has subject matter jurisdiction to construe the statute. See Williams v. Bituminous Casualty Corp., 51 N.J. 146, 152, 238 A.2d 177 (1968) (holding that because the Workers' Compensation Act permits a direct proceeding in the Division against an insurance carrier, that the Act vests the Division with subject matter jurisdiction to resolve "complex issue[s] of policy or statutory construction" when deciding insurance coverage claims).
The Association argues next that the Compensation Judge erred in construing N.J.S.A. 34:15-120.18a. The Association contends that the judge erred in determining that it was required to pay petitioner workers' compensation benefits, notwithstanding that she failed to file a proof of claim in the bankruptcy proceeding. The Association asserts that the requirement to file a claim in the bankruptcy proceeding applies to both classifications of claimants in the statute and does not depend on whether a claimant's injury arose prior or subsequent to *831 the employer becoming insolvent. In support of its contention, the Association relies on Dooley v. New Jersey Self-Insurer's Guarantee Association, No. A-2781-97 (App.Div. December 28, 1998), where in an unpublished opinion, a different panel construed the statute as argued by the Association. We reach a different conclusion.[4]
N.J.S.A. 34:15-120.18a provides in pertinent part:
Upon creation of the Insolvency Fund pursuant to the provisions of section 5 of this act,[5] the association is obligated for payment of compensation under chapter 15 of Title 34 of the Revised Statutes to insolvent members' employees resulting from: (1) incidents and injuries existing prior to the member becoming an insolvent member; and (2) incidents and injuries occurring after the member has become an insolvent member, if the employee makes timely claim for those payments according to procedures set forth by a court of competent jurisdiction over the delinquency or bankruptcy proceedings of the insolvent member.
In construing a statute, the function of a court is to determine the intent of the Legislature and, "generally the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). "A clear and unambiguous statute is not open to construction or interpretation. . . ." Watt v. Mayor & Council of Franklin, 21 N.J. 274, 277, 121 A.2d 499 (1956). "Such a statute is clear in its meaning and no one need look beyond the literal dictates of the words and phrases used for the true intent and purpose in its creation." Ibid. It is not the function of a court to "presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002). "Our analysis, therefore, begins with the plain language of the statute." DiProspero, supra, 183 N.J. at 493, 874 A.2d 1039.
A general rule of statutory construction is that a modifying phrase applies to the last antecedent phrase, absent contrary intent. State v. Santomauro, 261 N.J.Super. 339, 345, 618 A.2d 917 (App.Div.1993). However, the use of a "comma" to separate a modifier from an antecedent phrase indicates an intent to apply the modifier to all previous antecedent phrases. N.J. Bank v. Palladino, 77 N.J. 33, 45, 389 A.2d 454 (1978). Here, we are confronted with a "semicolon" after the first antecedent phrase, and a "comma" after the second antecedent phrase and before the modifying phrase. A "semicolon" is a punctuation mark used to denote a degree of separation greater than the comma but less than the period. See Webster's II New Riverside University Dictionary 1060 (3d ed.1994). Where a semicolon is used to separate two antecedent phrases, the application of the modifying phrase to those antecedents is affected. A semicolon in an antecedent phrase is commonly interpreted to separate that phrase from a subsequent modifying phrase. Van Wart v. Gregory's Garage, 6 N.J. Misc. 838, 840 (Dep't Labor 1928) (a semicolon indicates a "separation in the relations of the thought" and sets off one phrase from another).
We determine that the rules of statutory construction support the judge's interpretation of the statute. Accordingly, we hold *832 that an employee, whose injury occurs before the employer's insolvency, is not required to file a proof of claim in the employer's bankruptcy proceeding before qualifying for compensation payments under N.J.S.A. 34:15-120.18a.
We find support for our interpretation of the statute by comparing the enacted statute to the one initially proposed, L. 1993, c. 107, § 4, which provided in pertinent part:
a. Upon creation of the Insolvency Fund pursuant to the provisions of section 5 of this act, the association is obligated for payment of compensation under chapter 15 of Title 34 of the Revised Statutes to insolvent members' employees resulting from incidents and injuries existing prior to the member becoming an insolvent member and from incidents and injuries occurring within 30 days after the member has become an insolvent member, if the incidents giving rise to claims for compensation occur during the year in which the insolvent member is a member of the association and was assessable pursuant to the plan of operation, and if the employee makes timely claim for those payments according to procedures set forth by a court of competent jurisdiction over the delinquency or bankruptcy proceedings of the insolvent member.
[L. 1993, c. 107 § 4 (as proposed by Assemb. Anthony Impreveduto) (amended by Assemb. Labor Comm. (May 4, 1992)) (codified as amended at N.J.S.A. 34:15-120.18 (1993)).]
A reading of the proposed statute under the general rules of statutory construction calls for the qualifying condition of filing a timely claim in bankruptcy to be applicable to both classes of employees. The qualifying clause was set off from the antecedent clause by a "comma," and therefore, applied to all previous antecedent phrases. N.J. Bank, supra, 77 N.J. at 45, 389 A.2d 454. The committee amendment, however, discloses that the Legislature separated the two classes by designating each with a numerical preface and inserting a "semicolon" between the two classes. We construe the alteration of the proposed statute as intentionally limiting the qualifying clause to the second class of injured employees.[6]
The Association argues that the purpose of requiring claimants to file claims in the bankruptcy proceeding is to minimize the financial impact on the Association because the Association is deemed the assignee of the injured employee and may recoup all, or part, of its payments from the bankrupt's estate. N.J.S.A. 34:15-120.23. The Association contends such objective applies whether the employee is injured before or after insolvency. While acknowledging the argument, we determine that there is also reason for the Legislature to have intended that the condition of filing a claim in the bankruptcy proceeding should only apply to workers injured post-insolvency.
Federal bankruptcy law requires an insolvent party to list all creditors at the time of filing of its petition in bankruptcy. 11 U.S.C.A. § 521. This includes workers' compensation claims for pre-bankruptcy injuries. The Bankruptcy Code provides that a proof of claim is deemed filed for any claim that appears in the schedules filed in the bankruptcy proceeding except those scheduled as disputed, contingent or un-liquidated. 11 U.S.C.A. § 1111(a). Therefore, generally speaking, there would be no reason for an employee, injured pre-insolvency, *833 to file a proof of claim; however, there would be a need for an employee to file who was injured post-insolvency because his or her claim would not have been scheduled in the bankruptcy petition.
Moreover, under the facts presented, to deny petitioner the right to receive compensation payments from the fund established by the Legislature to protect injured employees, would be unjust. After Grand Union filed its first bankruptcy petition, petitioner was advised that she did not have to file a proof of claim in the bankruptcy proceeding and continued to receive compensation benefits under her employer's bond. Petitioner denies receiving notice of Grand Union's second bankruptcy petition, and the record is devoid of any evidence to the contrary. Even if petitioner had received notice of the second petition, unless specifically advised to the contrary, one would expect that she could have reasonably relied upon the advice previously received from Grand Union's counsel that she was not required to file a proof of claim. Barring her claim under these facts would run counter to the principle that the Workers' Compensation Act is social legislation that is to be liberally construed. Sager v. O.A. Peterson Constr. Co., 182 N.J. 156, 169, 862 A.2d 1119 (2004); N.J. Prop.-Liab. Ins. Guar. Ass'n v. State, 195 N.J.Super. 4, 10-11, 477 A.2d 826 (App.Div.), certif. denied, 99 N.J. 188, 491 A.2d 691 (1984).
Affirmed.
NOTES
[1] The Association was established by the Legislature, N.J.S.A. 34:15-120.16a, "to pay the workers' compensation claims of employees of insolvent employers who were self-insured." Senate Commerce Committee Statement to Assembly Bill No. 1127, L. 1993, c. 107 § 1. Claims are paid from the Insolvency Fund, N.J.S.A. 34:15-120.19a, managed by the Association. N.J.S.A. 34:15-120.18.
[2] N.J.S.A. 34:15-77 provides in part that "[a]ny employer desiring to carry his own liability insurance may make application to the Commissioner of Insurance showing his financial ability to pay compensation. The commissioner, if satisfied of the applicant's financial ability and the permanence of his business, shall by written order exempt the applicant from insuring the whole or any part of his compensation liability." The statute further provides that the commissioner has the "authority to [require and] accept [under certain statutory conditions], as evidence of such ability to pay compensation, . . . (c) a surety bond executed by an association or corporation licensed to do business in this State, provided the surety on any such surety bond undertakes to discharge the applicant's liability under this chapter. . . ."
[3] Because the Association's liability to reimburse petitioner for some or all of the other prescription expenses had not been determined as of the filing of this appeal, we deem the order appealed from as interlocutory. Appeals may only be taken as a right from a final judgment, "and a judgment is final only if it is final both as to all issues and all parties." Caggiano v. Fontoura, 354 N.J.Super. 111, 123, 804 A.2d 1193 (App.Div.2002). This rule of finality is applicable to decisions and judgments of administrative agencies. In re Donohue, 329 N.J.Super. 488, 494, 748 A.2d 598 (App.Div.2000). Accordingly, we would normally dismiss this appeal. Parker v. City of Trenton, 382 N.J.Super. 454, 458, 889 A.2d 1079 (App.Div.2006). However, we are satisfied that the issue of whether petitioner was obligated to have first filed a proof of claim in the bankruptcy court before qualifying for compensation payments under N.J.S.A. 34:15-120.18a should be decided in the interest of justice; and therefore, we grant leave to appeal nunc pro tunc. Caggiano, supra, 354 N.J.Super. at 124, 804 A.2d 1193.
[4] An unpublished opinion does not constitute precedent nor is it binding upon us unless it is required to be followed by reason of res judicata, collateral estoppel, the single controversy doctrine, or similar principle of law. R. 1:36-3.
[5] N.J.S.A. 34:15-120.19.
[6] The committee amendment also eliminated the restriction obligating the Association to cover compensation payments owed to an insolvent member only to those employees who were injured during a year that the employer was a member, and who were injured not later than thirty days after the member became insolvent.